| | |
|---|---|
| **VINCE CARRABBA d/b/a** : | |
| **CARRABBA HAUS,** : | Civ. No. 2:12-6342 (KM) |
| : | |
| **Plaintiff,** : | |
| : | **OPINION** |
| **v.** : | |
| : | |
| **SKIP MORGAT,** *et al.,* : | |
| : | |
| **Defendants.** : | |

**KEVIN MCNULTY, U.S.D.J.:**

The complaint in this action alleges that Defendants Skip Morgart,[1] James and Heather Laubmeier, and Firehouse Rottweilers, Inc. ("Firehouse") defamed Plaintiff Vince Carrabba's Rottweiler breeding business, Carrabba Haus. These defamatory statements were allegedly made to the president of the United States Rottweiler Club in an attempt to mar Carrabba's reputation.

Morgart and the Laubmeiers[2] have separately moved to dismiss for lack of personal jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(2) and (6). Carrabba, in opposition, contends that the Court has personal jurisdiction over the defendants. He does not address the defendants' contention that the FAC is insufficient under Rule 12(b)(6). The Court has reviewed all of the submissions and decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78.

I find that the Court has specific personal jurisdiction over Morgart, Mr. Laubmeier, and Firehouse, based on their trips to and/or communications with Carrabba's business in New Jersey; I find, however, that the Court lacks personal jurisdiction over Mrs. Laubmeier, and grant the motion to dismiss as to her. Meanwhile, I find that the complaint fails to state a claim against Morgart, and grant his motion to dismiss. I deny, however, the motion of Mr.

---

[1] Morgart's name was incorrectly spelled as "Morgat" in the caption of the Complaint.

[2] The Laubmeiers allegedly own Firehouse Rottweilers, Inc. ("Firehouse"), which moved to dismiss together with the Laubmeiers. References to the Laubmeiers as movants include the Firehouse business unless otherwise specified.

Laubmeier and Firehouse to dismiss the complaint for failure to state a claim. As to Mrs. Laubmeier, that point is moot in light of the court's lack of personal jurisdiction over her.

## I.    BACKGROUND

### A. Factual Allegations

The following statement of facts is taken from the First Amended Complaint (the "FAC"), unless stated otherwise. These allegations have not, of course, been tested by any finder of fact. [3]

According to the FAC, Carrabba operates Carrabba Haus, a show-quality Rottweiler dog breeding business. (FAC ¶ 13 [Docket No. 4]). Carrabba and Morgart were friends, and, according to Morgart, Carrabba first gave Morgart a Rottweiler puppy in early 2010 (the "2010 puppy"). (Morgart Affidavit at ¶¶ 8-11 (Doc. No. 10-1)). Then, in April 2011, he gave Morgart a second male Rottweiler puppy (the "2011 puppy"). (FAC. ¶¶ 14, 23). In July 2011, the 2011 puppy developed a dental problem: a baby canine tooth[4] did not fall out before the corresponding adult canine tooth came in, resulting in gum irritation and slight bleeding. (*Id.* ¶ 16). The veterinarian advised Morgart and Carrabba that surgery to remove the baby canine tooth was necessary. (*Id.* at ¶ 19). Morgart could not afford the surgery, so Carrabba advanced $2,000 to cover it. (*Id.* at ¶ 21). The surgery was successful. (*Id.*).

Soon after, according to Carrabba, Morgart spoke with one or both of the Laubmeiers. (*Id.* at ¶ 22). Morgart allegedly said that Carrabba had "sold him several Rottweiler puppies, both of which had numerous problems." Morgart allegedly represented that Carrabba have provided him one male and one female Rottweiler puppy, and that the "female Rottweiler puppy required braces."[5] (*Id.* at ¶ 22). James Laubmeier attempted to confirm this with Carrabba, who replied that he had given Morgart only male Rottweiler puppies,

---

[3] This discussion, as it must, assumes the truth of the Complaint's allegations solely for the purpose of analyzing a motion based on Rule 12(b)(2) and (6). See pp. 3, 5, *infra*.

[4] I am uncertain whether "canine tooth" refers to a cuspid, or more generically to the tooth of a dog. The difference is immaterial at present.

[5] These statements that Morgart allegedly made to the Laubmeiers will be referred to as the "Morgart Statements."

one of which did undergo a necessary dental surgery. (*Id.* at ¶ 25).[6]

One or both of the Laubmeiers, under the auspices of their competing dog-breeding business, Firehouse, allegedly made an oral complaint to the United States Rottweiler Club (the "USRC," apparently based in Wisconsin). (FAC at ¶ 26) These Laubmeier Statements[7] allegedly included allegations that Carrabba was "breeding dogs without first conducting certain blood tests," that Morgart had received "both a male and female Rottweiler from Plaintiff Carrabba and that both puppies were improperly bred and that the female puppy required braces." (*Id.*). The Laubmeiers recommended that Carrabba "be suspended from the USRC for a period of one (1) year" and "be prohibited from doing any and all future breeding for a period of one (1) year or more." (*Id.* at ¶ 34). In April 2012, Carrabba became aware of the Laubmeier Statements. (*Id.* at ¶ 35). Such statements were extremely damaging to the reputation of Carrabba Haus. (*Id.* at ¶ 28).

Carrabba alleges that the Morgart and Laubmeier Statements are false, and that they were made recklessly or with actual or constructive knowledge of their falsity. (*Id.* at ¶¶ 24, 27, 30, 33, 37). The resulting damage to Carrabba's business allegedly exceeded $100,000. (*Id.* at ¶ 52). Carrabba alleges that Morgart and the Laubmeiers made their statements to harm Carrabba Haus, and that the Laubmeiers had the additional motive of providing a commercial boost to their competing business, Firehouse. (*Id.* at ¶¶ 24, 41, 42)

B. Procedural History

This action was originally filed on October 9, 2012. The FAC, dated October 18, 2012, contains causes of action for invasion of privacy, business information misrepresented for defendants' benefit, and defamation. Carrabba requests actual and punitive damages. Subject matter jurisdiction is based on diversity of citizenship: Carrabba is a citizen of New Jersey, Morgart is a citizen of Ohio, and the Laubmeiers and Firehouse are citizens of Arizona. The amount in controversy is alleged to exceed $75,000. *See* 28 U.S.C. § 1332. Venue is alleged to be proper because a substantial part of the events or omissions giving rise to the claim occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

---

[6] Morgart confirms that he received two dogs, both male. (Morgart Aff. at ¶ 13).

[7] I will refer to the content of the Laubmeiers' alleged oral complaint to the USRC as the "Laubmeier Statements."

Morgart has moved to dismiss for lack of personal jurisdiction, improper venue,[8] and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(2), (3), and (6). The Laubmeiers have separately moved to dismiss for lack of personal jurisdiction and failure to state a claim. Carrabba responds that specific jurisdiction exists over all of the Defendants. He does not address the 12(b)(6) aspect of either motion. [9]

## II. ANALYSIS

I first analyze whether personal jurisdiction exists (II.A) before considering whether the FAC states a claim against the Defendants (II.B).

### A. Personal Jurisdiction

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2001). While a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), the court must still examine any evidence presented with regard to disputed factual allegations. *See, e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155-56 (3d Cir. 2010) (examining the evidence supporting the plaintiff's allegations); *Patterson v. FBI*, 893 F.2d 595,

---

[8] Morgart's motion lists improper venue as one of the grounds but there is no corresponding discussion in his brief. Because he does not address it, neither do I.

[9] Attached to Carrabba's opposition is a Declaration ("Carrabba Decl." DE 15-1) and motion to file a Second Amended Complaint ("SAC") (DE 15-2). The proposed SAC would add subparagraphs 13(a) through (k), which amplify the allegations as to the dollar value of the dogs; the alleged motives of the defendants ("greed and jealousy," as well as retaliation for Carrabba's refusal to permit them to show his dogs in competition); and defendants' electronic and personal contacts with New Jersey.

"The court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The decision to grant a motion to amend a pleading rests in the sound discretion of the district court." *Marlowe Patent Holdings LLC v. Dice Electronics, LLC*, Civ. No. 10-1199, 2013 WL 775764, at *5 (D.N.J. Feb. 27, 2013). The Defendants have not opposed Carrabba's application, and I see no reason to deny it.

Because the motions are directed to the FAC, however, I discuss them primarily in relation to that pleading. I supplement the discussion to account for the Carrabba Declaration and proposed new subparagraphs 13(a)-(k) of the SAC, as relevant. The rulings herein should therefore be deemed to apply to the proposed SAC as well.

603-04 (3d Cir. 1990) ("'A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'") (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

The plaintiff "need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Nevertheless, a plaintiff may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction: "Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 604 (internal citations omitted); *Time Share Vacation Club*, 735 F.2d at 66 n.9.

To assess whether it has personal jurisdiction over a defendant, a district court must undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the court must analyze the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*; Fed. R. Civ. P. 4(k). In other words, "[a] federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales*, 384 F.3d at 96. "Second, the court must apply the principles of due process." *WorldScape, Inc. v. Sails Capital Mgmt.*, Civ. 10-4207, 2011 WL 3444218 (D.N.J. Aug. 5, 2011) (citing *IMO Indus.*, 155 F.3d at 259). In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 316 (1945)).

There are two kinds of personal jurisdiction that allow a district court to hear a case involving a non-resident defendant: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-415 & n. 9 (1984). Carrabba, however, argues only for specific jurisdiction, which rests on the particular forum-related activities of the defendant that give rise to the

plaintiff's claims. *See Daimler AG v. Bauman,* 571 U.S. ____, No. 11-965, slip op. at 8 (Jan. 14, 2014); *Helicopteros,* 466 U.S. at 413-14.

As the Supreme Court has recently reaffirmed, an out-of-state defendant's "continuous and systematic" contacts with the forum state will support specific jurisdiction. *Daimler,* 571 U.S. at ___, slip op. at 19 (citing *International Shoe,* 326 U.S. at 317) (jurisdiction can be asserted where a corporation's in-state activities are not only "continuous and systematic, but also give rise to the liabilities sued on"). It is also true, however, that "some single or occasional acts of the corporate agent in a state . . . , because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit." *Daimler,* 571 U.S. at ___ n.17, slip op. at 19 n.17 (quoting *International Shoe,* 326 U.S. at 318); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 n.18 (1985) (a single act may satisfy minimum contacts test if it creates a substantial connection with the forum). The defendant need not be physically located in the state while committing the jurisdiction-creating acts. *Burger King,* 471 U.S. at 476. Nor is specific jurisdiction defeated merely because the bulk of the harm occurred outside the forum. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780 (1984).

Under this Circuit's synthesis of the Supreme Court case law, specific jurisdiction depends on three issues: (1) whether the defendant purposefully directed its activities at the forum (the "purposeful availment" requirement); (2) whether the litigation arises out of or relates to at least one of the contacts (the "relatedness requirement"); and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice (the "fairness requirement"). *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007).

### 1. *Personal jurisdiction over Morgart*

The Court first looks to "purposeful availment," *i.e.,* whether Morgart purposefully directed his activities at the forum state of New Jersey. *O'Connor,* 496 F.3d at 317. Morgart argues that he has no substantial connection to New Jersey; he visited only once, in 2010, to pick up the first Rottweiler puppy (not the 2011 puppy that is the focus of this defamation action). (Morgart Aff. at ¶ 11). Carrabba, however, states that Morgart repeatedly called, emailed, and sent faxes to Carrabba in New Jersey in connection with obtaining Rottweiler puppies, and twice visited Carrabba's facilities in New Jersey to obtain the dogs. (Decl. of Vince Carrabba at ¶¶ 11-12). These contacts, Carrabba says, are sufficient to confer specific jurisdiction over Morgart for these claims. As

discussed below, the parties' accounts diverge to some extent, but the facts on which they agree are sufficient to resolve the issue.

Various forms of communications between parties, including written correspondence, telephone calls, and emails, factor into the minimum contacts analysis. *See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (written correspondence and phone calls); *see, e.g., George Young Co. v. Bury Brothers, Inc.*, 03-cv-3353, 2004 WL 1173129, at *5 (E.D. Pa. Apr. 2, 2004). "[W]hen the plaintiff can proffer evidence of a defendant deliberately directing mail, telephone, and/or email communications to the forum state," then a finding of personal jurisdiction may be proper. *Arthur Schuman, Inc. v. Banco Santander Brasil, S.A.*, Civ. No. 06-1331, 2008 WL 320430, at *5 (D.N.J. Jan. 30, 2008) (citing *Grand Entertainment*, 988 F.2d at 482 ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction")); *accord O'Connor*, 496 F.3d at 318 (finding that the defendant "deliberately reached into Pennsylvania to target two of its citizens" when it "mailed [plaintiff] a brochure and traded phone calls with them for the purpose of forming an agreement to render spa services"). When (as is typical) the communications relate to a contractual or business relationship, the court will consider them in the context of "prior negotiations and contemplated future consequences, along with the terms of the contract...." *Burger King*, 471 U.S. at 479, 105 S. Ct. at 2185.

Here, Morgart repeatedly telephoned, emailed and faxed Carrabba in New Jersey, and visited Carrabba to obtain the first dog. As to the second dog, there were at least telephone or electronic communications with Carrabba in New Jersey. Taken together, those contacts satisfy the "purposeful availment" requirement, *i.e.*, they demonstrate that Morgart purposefully directed his activities to this State. *See Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999) ("While telephone and mail contacts with residents of the forum state can be enough to subject a defendant to jurisdiction, such cases include other indications of a substantial connection. In *Carteret Savings [Bank, FA v. Shushan*, 954 F.2d 141, 149-50 (3d Cir. 1992)], for example, in addition to telephoning and corresponding with his client, the Louisiana lawyer also traveled to New Jersey to visit his client.").

Second, the Court must determine whether the contacts meet the "relatedness requirement," *i.e.*, whether this litigation arises out of or relates to at least one of Morgart's contacts with this State. *O'Connor*, 496 F.3d at 317.

[The court] must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.

*Id.* at 323 (citation omitted).

To take an easy example, it probably would not be enough if Morgart had sent personal emails to one New Jersey resident, Smith, but was sued by another, Jones. Although purposeful direction would be present, relatedness would be lacking (assuming the emails to Smith were not tied to Jones's claims). On the other hand, a single email exchange might be enough to support jurisdiction if that very communication gave rise to the cause of action. This case does not present either of those clear scenarios. The Court must determine whether the Complaint's allegations are causally "related" to the contacts in a manner that may fall short of proximate causation but still meets the tests of proportionality and foreseeability. *Id.*

Here, Carrabba has stated in his Declaration and a proposed SAC that Morgart has visited his facility in New Jersey twice to see his Rottweilers (Morgart says it was once). Carrabba gave Morgart two puppies, including the one primarily at issue here. (Carrabba Decl. ¶ 12). Morgart took delivery of the first, 2010 puppy in New Jersey. (Morgart Aff. at ¶ 11). At that point, Morgart well knew that he was dealing with a New Jersey-based breeder and purposely continued to deal with him. As to the 2011 puppy whose dental problems precipitated this claim, however, Morgart did not take physical delivery in New Jersey.

Even as to the 2011 puppy, however, Carrabba emphasizes that Morgart repeatedly contacted him in New Jersey "by means of telephone calls, e-mails, and faxes." In those communications, Morgart allegedly solicited Carrabba to give him a top Rottweiler puppy. (Carrabba Decl. at ¶ 12; *see also* proposed SAC at ¶¶ 13(e) – 13(i)). Carrabba's affidavit is not perfectly clear as to whether all of these communications allegedly occurred in 2011 and related to the 2011 puppy. It is clear however, that at least some of them allegedly did, and that these communications culminated in Carrabba's giving Morgart the second puppy.

Morgart seemingly concedes that he continued to contact Carrabba in New Jersey after he received the 2011 puppy. Their follow-up communications concerned the selection of a veterinarian to address the puppy's dental problems. That issue relates to the core allegations of the Complaint. (Morgart Aff. at ¶¶ 14, 16).

I find that Morgart's communications and 2010 visit with Carrabba meet the relatedness requirement. They were tied to obtaining the first Rottweiler puppy, and the communications continued with respect to the second. Morgart knew he was obtaining a puppy from a New Jersey breeder, and purposefully directed his activities toward doing so. Likewise, he directed questions regarding treatment of the 2011 puppy's dental problems to Carrabba in New Jersey. True, the interstate communications did not themselves contain any alleged defamation, and they were not in themselves the proximate cause of the claimed injury to Carrabba's reputation. They were, however, intimately connected to the transactions that gave rise to the alleged defamatory statements about the puppies. They did make this State's assertion of personal jurisdiction reasonably foreseeable in the event something went wrong. They do make it reasonable and proportional for a claim to be asserted against Morgart in New Jersey. So I find that the relatedness requirement is met here.

Third, the court must determine whether these contacts satisfy the "fairness requirement," *i.e.,* whether exercising jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *Id.* at 317.

> The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King* [*Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)]; *see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207 (3d Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't* [], 988 F.2d [at] 483 [] ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.").

*Id.* at 324. Morgart does not present, and I do not see, a compelling case that litigating in New Jersey would be unreasonable and unfair, given the acts and expectations of the parties as discussed above.

9

I thus find that the Court possesses personal jurisdiction over Morgart. Morgart's motion to dismiss the complaint for lack of personal jurisdiction, *see* Fed. R. Civ. P. 12(b)(2), is therefore denied.

## 2. *Personal jurisdiction over the Laubmeiers and Firehouse*

Carrabba alleges that, in early 2011, James Laubmeier telephoned him in New Jersey more than ten times and also emailed him. Laubmeier, Carrabba says, wanted to obtain one of Carrabba's admirable dogs. Carrabba believes this is enough to demonstrate that Laubmeier purposefully directed his activities toward this State for purposes of personal jurisdiction. Unlike Morgart, however, Laubmeier never visited New Jersey and never actually obtained a dog from Carrabba.

First, I consider purposeful availment. On that issue, "minimal correspondence alone will not satisfy minimum contacts." *Barrett*, 44 F. Supp. 2d at 729. There must be evidence that such communications amount to purposeful targeting of a forum. The evidence must show that a defendant deliberately and knowingly reached into New Jersey. *See id.* Some examples from the case law may help convey the flavor.

In *O'Connor*, an out-of-state hotel, after plaintiffs' initial stay there, "continued to cultivate the [parties'] relationship by mailing seasonal newsletters to the [plaintiffs'] Pennsylvania home." Then, after the plaintiffs booked an additional trip to the hotel, the hotel "mailed them a brochure and traded phone calls with them for the purpose of forming an agreement to render spa services. Through these acts, [defendant] deliberately reached into Pennsylvania to target two of its citizens." 496 F.3d at 318.

In *Grand Entertainment,* the foreign defendant, "in his individual and corporate capacity, directed at least twelve communications to the forum." He also "engaged in negotiations for an agreement that would have created rights and obligations among citizens of the forum and contemplated significant ties with the forum. Thus, [plaintiff] deliberately and personally directed significant activities toward the state." 988 F.3d at 482-83. The Court found it proper to assert personal jurisdiction for breach of a contract to distribute films that the parties, through their communications, allegedly formed.

Here, it appears that Mr. Laubmeier repeatedly contacted Carrabba, intending to purchase one of Carrabba's puppies. Mr. Laubmeier allegedly telephoned Carrabba "in New Jersey more than ten (10) times, and communicated with [Carrabba] by e-mail as well, [] soliciting [Carrabba] for one of [his] top dogs." Carrabba alleges that his "refusal to give him one of [his] top Rottweiler's [] directly led to Laubmeier making false and defamatory statements[.]" (Carrabba Decl. at ¶ 13 (Doc. 15-1)). Laubmeier, Carrabba says, acted out of professional envy, and in retaliation for Carrabba's refusal to let Laubmeier show Carrabba's dogs. *Id.; see also* proposed SAC at ¶¶ 13(e) – 13(j)).

These communications, though hardly overwhelming, satisfy the purposeful availment requirement.[10] Carrabba does not state in so many words that he told Mr. Laubmeier Carrabba Haus was based in New Jersey. It is a natural inference, however, that Mr. Laubmeier knew the location of the business from which he sought to take physical delivery of a dog.[11] Mr.

---

[10]     To the extent James Laubmeier was acting as an officer of Firehouse, his contacts may be relevant to jurisdiction over the corporation. A corporation may be subject to personal jurisdiction based the actions of its agents and officers, and Carrabba alleges that Mr. Laubmeier is an officer or director of Firehouse. (FAC ¶ 9). *See generally Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (in examining whether personal jurisdiction exists over a corporate officer separate from his employer, "[e]ach defendant's contacts with the forum state must be assessed individually.").

A non-resident corporation may be subject to jurisdiction, on a general or specific basis, depending on the contacts and actions of its agents. *See, e.g., Grand Entertainment Group v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir.1993) ("[a]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction"); *Donatelli v. National Hockey League*, 893 F.2d 459, 465–66 (1st Cir.1990) (observing that personal jurisdiction may be found where parent corporation uses a subsidiary so that an agency relationship between the two corporations can be received); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.1990) ("[f]or purposes of personal jurisdiction, the actions of an agent are attributable to the principal").

*Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*, Civ. No. 96-369, 1997 WL 576402, at *22 (D.N.J. Sept. 12, 1997). I note that the Laubmeiers deny that Firehouse is an incorporated entity.

[11]     And, for what it is worth, he presumably would have dialed a New Jersey area code. In an age of cell phones, this fact has less weight, but the area code might have at least suggested a New Jersey connection. The complaint also refers to Morgart

Laubmeier thus deliberately and knowingly reached into New Jersey to engage one of its citizens in a transaction. In that respect his actions were like those of the hotel defendant that mailed promotional materials to a plaintiff in Pennsylvania. *See O'Connor,* 496 F.3d at 318.

The next, more difficult question is whether this litigation is sufficiently related to those contacts. As noted above, the "relatedness" test is "somewhat looser than the tort concept of proximate causation." *O'Connor,* 496 F.3d at 323. Still, the Laubmeier/New Jersey connection must be "intimate enough to keep the quid pro quo proportional and jurisdiction reasonably foreseeable." *Id.*

The contact most closely related to this defamation action is Laubmeier's telephone call to Carrabba to check what Morgart had told him about the dog(s). According to Carrabba, in that telephone conversation he explicitly told Laubmeier that Morgart's statements were false. Laubmeier then knowingly repeated an exaggerated version of them to the USRC anyway. FAC ¶¶ 25-26. This particular telephone contact thus bears a fairly close relation to the allegations from which this defamation claim arises.

Otherwise, the "relatedness" is alleged to reside mainly in the mind of Laubmeier. That is, Carrabba does not allege that the cause of action arose directly from his telephone and email relationship with Laubmeier. Rather, Laubmeier allegedly defamed him in retaliation for Carrabba's *refusal* to enter into a transaction with him. This relation probably falls short of proximate causation in the tort sense.[12]

It does, however, constitute some kind of causation, and it does relate to the ensuing defamation. The failure of Mr. Laubmeier's telephone and email negotiations with Carrabba allegedly motivated him to make the defamatory statements. Laubmeier allegedly sought to obtain one of Carrabba's puppies, failed, and in retaliation lodged a false complaint that Carrabba's operation fell short of ethical and breeding standards. It is easily inferable that Laubmeier

---

and Laubmeier "(who are close friends)," but I take that to mean that they are close friends of each other, not of Carrabba. SAC ¶13(d).

[12]    A connection based on subjective motive threatens to exceed reasonable bounds of causation. Consider, for example, the tortfeasor who was motivated by the desire to impress a far-off movie star with whom he has never had any actual contact.

would have known that his defamatory statements to the USRC would have an immediate adverse impact on Carrabba and Carrabba Haus in New Jersey. Indeed, the whole alleged purpose of those statements was to set in motion an investigation and suspension of Carrabba's New Jersey dog breeding business. In addition, it cannot be overlooked that Carrabba and Laubmeier were competitors. In making the statements, Laubmeier allegedly sought to hurt Carrabba's business in New Jersey and gain himself a competitive edge.

In short, the harm in New Jersey is not merely alleged to be foreseeable in some general sense. It is alleged to be precisely what Laubmeier intended when he committed this intentional tort. Thus there is a proportionality in subjecting him to suit in New Jersey. *See O'Connor* at 323-324

As an alternative mode of analysis, I pause to discuss the "effects test," a jurisdictional doctrine peculiar to intentional torts that may support specific jurisdiction. *See Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." *Carteret Savings Bank FA v. Shushan*, 954 F.2d 141, 148 (3d Cir. 1992). That *effect* may support jurisdiction even where a defendant's other *contacts* with the forum state are minimal. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Specifically, under the effects test, the plaintiff must show that:

> (1) the defendant committed an intentional tort;
>
> (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and
>
> (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Imo Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). In order to establish that the defendant "expressly aimed" its conduct at the forum, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266.

For the reasons already amply discussed, Laubmeier's alleged tortious conduct would satisfy the effects test. The defamatory statements were not purposely disseminated to New Jersey, but the intended harm —the "brunt," for purposes of the effects test—was to be felt in this State. That, in my view, helps

resolve what might otherwise be a close "relatedness" question. S*ee also Gordy v. Daily News, L.P.,* 95 F.3d 829, 835 (9th Cir. 1996) (in defamation case, blending effects test with relatedness inquiry).

Thus this case is distinguishable from *Remick v. Manfredy,* 238 F.3d 248 (3d Cir. 2001), in which the Court of Appeals, applying the "effects test," upheld the dismissal of a defamation claim based on lack of personal jurisdiction. There, a Pennsylvania sports lawyer sued his out-of-state client, a boxer, for defamation. The claim was based on the boxer's faxed letter to the lawyer terminating the representation. The lawyer claimed "publication" because two employees in his office had seen the letter on the fax machine, and also because the contents were disseminated to other members of the boxing community. The Court of Appeals found that the first two *Calder* factors were satisfied: defamation is an intentional tort, and statements impugning a person in his profession naturally cause their primary harm where that person practices. It found, however, that the third factor—aiming the tortious conduct at the forum—was absent because (a) the office employees read the faxed letter only by happenstance, and (b) the publication to other members of the boxing community bore no particular relation to Pennsylvania.

As to the first two factors, this case is on point with *Remick.* As to the third, it is distinguishable. The publication of the defamation to the president of the USRC was not a diffuse, out-of-state event, as in *Remick.* Rather, Leibmeier fully intended that USRC would close the loop by investigating and suspending Carrabba's Pennsylvania-based dog showing activities. When combined with the failed telephone and electronic negotiations that were the background for the tort, this is, I believe, enough to satisfy the third *Calder* factor.

The last specific jurisdiction question is whether litigating in New Jersey would comport with traditional notions of justice and fair play. As noted above, a compelling showing would be required. Mr. Laubmeier makes no independent argument or showing on this prong. His motion to dismiss for lack of personal jurisdiction is denied.

As to Heather Laubmeier, Carrabba provides no example of any contact with New Jersey. Even the substantive allegations against her are so attenuated as to barely exist. In general, the tortious actions are attributed to James Laubmeier specifically. Here and there, his name is followed by "and/or H. Laubmeier." *See* FAC ¶¶ 9-11, 22. The jurisdictional allegations as to Heather Laubmeier are not supplemented in the Carrabba Declaration or the proposed SAC.

On its face, the motion to dismiss the case against Heather Laubmeier

for lack of personal jurisdiction should be granted. Carrabba, however, has requested jurisdictional discovery. I will consider that request before deciding whether to enter a dismissal. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("before the district court dismisses for lack of personal jurisdiction," the court must determine whether the plaintiff makes the "required threshold showing" to pursue jurisdictional discovery).

The standard for ordering jurisdictional discovery is straightforward: the claim cannot be "clearly frivolous" and the plaintiff bears the burden of demonstrating facts "that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." *Id.* Carrabba falls short of this threshold because he has not specifically alleged *any* contacts, real or hypothesized, that Ms. Laubmeier might personally have had with this State. He does not so much as suggest a basis for thinking that discovery would lead to evidence relevant to jurisdiction. Jurisdictional discovery is therefore not warranted, and Heather Laubmeier's motion to dismiss the complaint for lack of personal jurisdiction is granted.

B. <u>Failure to State a Claim</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party, ordinarily the defendant, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). For purposes of a motion to dismiss, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by intervening Supreme Court case law such as *Twombly, infra*).

The United States Supreme Court has elaborated on the standards that a court is to apply in analyzing a Rule 12(b)(6) motion to dismiss, particularly in light of the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59,

64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70-73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-211 (3d Cir. 2009). In doing so, it has prescribed a three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See [Iqbal,* 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### 1. *Whether a claim is stated against Morgart*

Generally, Morgart argues that the FAC must be dismissed because it alleges not false statements of a factual nature, but rather harmless statements, true statements, or non-actionable opinions. One allegedly false statement was that Carrabba gave him a male and a female dog. (Concededly, both were male.) The other is that the dogs had problems, and that the "female" puppy required braces for its teeth. (The FAC acknowledges that the second puppy did require dental surgery, but not braces.)[13] Carrabba does not address

---

[13]    In an affidavit accompanying his motion, Morgart adds that he had difficulty registering the first puppy with the American Kennel Club, making it difficult

Morgart's 12(b)(6) contentions in his papers. Nevertheless, I address each cause of action in turn.

The first count of the FAC is for invasion of privacy.[14] That is an umbrella term for four different torts: "(1) intrusion; (2) public disclosure of private facts; (3) placing a plaintiff in a false light in the public eye; and (4) appropriation of a plaintiff's name or likeness for defendant's benefit." *Rolax v. Whitman*, 175 F. Supp. 2d 720, 726 (D.N.J. 2001) *aff'd*, 53 F. App'x 635 (3d Cir. 2002) (citing *Rumbauskas v. Cantor*, 138 N.J. 173, 180 (1994)). The FAC alleges that the Defendants made false statements about Carraba's business for their own financial gain. The intent seems to be to assert a claim of "false light" publicity. "False light," unlike the other three privacy torts, is more akin to defamation; it requires a false statement, not just one that reveals private information.

"The tort of false light has two elements: (1) the false light in which the other was placed would be highly offensive to a reasonable person"; and (2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 589 (2009).

The first issue, then, is whether the Morgart Statements placed Carrabba in a false light. Those statements, apparently oral statements to Laubmeier that Carrabba heard about secondhand, are somewhat vaguely described.

Carrabba alleges that the Morgart Statements were false in that they conveyed that the two puppies had "problems" when, in fact, only one of the dogs had one problem. In addition, Carrabba denies that one of the dogs required braces for its teeth. From the point of view of libel law, these interpretations appear overly technical. First, I note the everyday, colloquial use of the word "problems." When we say, for example, that someone has "health problems," we do not necessarily mean that he suffers from multiple diseases; "problems" can signify a single, serious issue. Second, in this case, the 2011 puppy had a single dental condition, but one that required multiple

---

to show the dog. For the purposes of the 12(b)(6) motion, however, I have not given any consideration to the affidavit.

[14]     The first cause of action may be primarily directed against the Laubmeiers. Two references to "Defendants" (FAC ¶47), however, suggest that it is asserted against Morgart as well.

visits to the veterinarian, as well as surgery. We could rightly call these multiple burdens or nuisances "problems." Third, the distributive attribution of the problems to both dogs gratuitously interprets the statement in the most damaging way possible. To say, for example, that a shipment of widgets had "problems" is not necessarily to imply that each widget was defective. Fourth, the statement that one dog required braces, while allegedly incorrect, must be understood in light of the admitted fact that the dog did have serious dental problems. The *incremental* impact of "braces" does not raise the statement to the level of an actionable falsehood.

It is thus questionable whether the statements were substantially false at all. More to the point, however, it is clear that the *discrepancy* between the (alleged) truth and Morgart's (alleged) statements does not carry them across the line that separates "damaging but true" from "highly offensive to a reasonable person." Carrabba acknowledges that he gave Morgart two dogs and that one had a dental condition that required surgery. I consider also that the dogs were given as gifts, not sold with the *imprimatur* of Carrabba Haus in a manner that might suggest fraud. Morgart may be guilty of looking a gift dog in the mouth, but his alleged statements were not so careless of the truth that they cast Carrabba or his business in a tortiously false light.

In short, Morgart's alleged statements do not add up to a "false light" tort, *i.e.,* they were not so false or so inflammatory as to be "highly offensive to a reasonable person." Accordingly, this count is dismissed as against Morgart for failure to state a claim.

I now turn to the FAC's second count, "Business Information Misrepresented for Defendants' Benefit," and third count, "Defamation." I see no cause of action under New Jersey or common law that corresponds to the second count, and Carrabba's brief does not clarify what cause of action was intended. The allegations are that Morgart released and provided "false information to reasonably foreseeable recipients, the consumer public included, which was damaging to Plaintiff's personal reputation as well as Plaintiffs' Rottweiler Breeding Business." This suggests defamation, which is also Carrabba's third cause of action. I thus address counts two and three together.

"To establish defamation under New Jersey law, a plaintiff must show the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a

sufficient degree of fault." *Mangan v. Corporate Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.,* 379 N.J. Super. 63, 79 (App. Div. 2005)).

"Whether the statement is susceptible of a defamatory meaning is a question of law for the court." *Ward v. Zelikovsky*, 136 N.J. 516, 529, 643 A.2d 972 (1994). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *G.D. v. Kenny*, 205 N.J. 275, 293, 15 A.3d 300 (2011) (citations omitted). "In making this determination, courts must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement." *DeAngelis v. Hill*, 180 N.J. 1, 14, 847 A.2d 1261 (2004). To qualify as a defamatory statement, the statement must be able to be proven true or false. *Mangan v. Corporate Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204-05 (D.N.J. 2011) (quoting and citing *Lynch v. N.J. Educ. Assoc.*, 161 N.J. 152, 167 (1999)).

The statement that one dog was female when it was, in fact, male, is not one that would subject Carrabba to contempt, ridicule, or harm to his reputation. *See Kenny*, 205 N.J. at 293; *DeAngelis*, 180 N.J. at 14. For sure, the statement was inaccurate. But this statement does not go to the "sting" or the "gist" of any libel; for these purposes, it is best characterized as a minor inaccuracy. *See Masson v. New Yorker Magazine*, 501 U.S. 496, 517, 111 S. Ct. 2419 (1991) ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" (internal citation omitted)); *see also Kenny,* 205 N.J. at 306-307 (truth is a defense for statement that a person went to jail for five years when in fact he was sentenced to five years and served less); *Herrmann v. Newark Morning Ledger Co.*, 48 N.J. Super. 420, 431-432, 138 A.2d 61 (App. Div. 1958).

Then there is the alleged statement that the puppies (plural) had problems (plural). The first portion of the statement, regarding dental problems, is clearly true as to the second, 2011 puppy, as the FAC itself reveals. (FAC at ¶¶ 16-20). As discussed, *see* pp. 17-18, *supra,* the possibility of interpreting the statement to include the 2010 puppy does not render it defamatory. I find the statement to merely reflect a typical, idiomatic way of speaking. *See generally DeAngelis*, 180 N.J. at 15 ("In respect to context, courts must consider '[t]he listener's reasonable interpretation, which will be based in part on the context in which the statement appears[.]'" (internal citation

omitted)). Comparing the (true) statement that one puppy had dental problems to the (allegedly false) blanket statement that the puppies had problems, I do not find that the discrepancy rises to the level of a defamatory falsehood. *See Masson*, 501 U.S. at 517 (asking whether the allegedly defamatory statement "would have a different effect on the mind of the [listener]" than the truth); *Kenny*, 205 N.J. at 294 (quoting *Masson*).

The statement that the second puppy required orthodontic braces is a closer call. I find, however, that this statement is not defamatory. Whether a statement is defamatory depends not only on its content but on its context. *See DeAngelis*, 180 N.J. at 14. The context, drawing only on the allegations of the complaint,[15] is that the 2011 puppy had a dental condition requiring medical attention. The point of Morgart's alleged statement is truthful: the dog had a costly dental problem. Morgart's statement does not imply underlying objective facts that are false, given the context. The statement regarding the braces, even assuming it inaccurately described the surgical treatment the dog actually received, can thus be viewed as "fairly accurate" and thus non-defamatory. *See Samost v. Voorhees*, 2013 N.J. Super. Unpub. LEXIS 554 (App. Div. Mar. 14, 2013) (statement that "we believe the court has...chased down assets of a man who tried to hide them from the court," although defendant "may have embellished [a judge's] findings or used hyperbole," had no defamatory meaning) (citing *DeAngelis*, 180 N.J. at 15).

Morgart's motion to dismiss the claims against him for failing to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) is accordingly granted.

### 2. *Whether a claim is stated against Laubmeier and Firehouse*

Mr. Laubmeier[16] makes a blanket argument that his alleged statements are not actionable, whether on a defamation or a false light theory, because they are not factual in nature, but only opinions. I cannot agree.

The Complaint alleges that Laubmeier told the president of the USRC that Carraba was "breeding dogs without first conducting certain blood tests"

---

[15] For present purposes, I disregard Morgart's affidavit, which avers that the statement is true. Truth is a defense, but this is a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6), so I assume the statement was false, as alleged in the complaint.

[16] I have already found that the Court lacks jurisdiction over Mrs. Laubmeier. From her point of view, the Rule 12(b)(6) motion to dismiss is moot.

and that both of the dogs Morgart received from Carrabba were "improperly bred." These statements are not mere opinions: they are factual allegations about Carrabba's practices. Blood tests, for example, either were or were not conducted; that is a falsifiable proposition. Laubmeier may have strayed closer to the realm of opinion in allegedly stating that the dogs were "improperly bred." To a member of the kennel-club set, however, that phrase may well have a settled meaning. Or it may have just been a different way of referring to the failure to conduct blood tests. At any rate, the blood test statement alone is sufficient to save the FAC from dismissal based on the fact/opinion distinction.

As stated above, the tort of false light requires that statements would be highly offensive to a reasonable person and that the speaker made them knowingly or recklessly. *Leang*, 198 N.J. at 589. Here, a fact finder could find the statements sufficiently offensive because they impugn Carrabba's integrity or competence in a matter central to his business. According to the FAC, Laubmeier fabricated these statements. They go beyond anything that Morgart, the original source, allegedly told Laubmeier. Laubmeier allegedly made the statements after checking with Carrabba, who warned him that they were false. And he allegedly made the statements to the president of USRC, with the intent that Carrabba's show privileges be suspended. That is enough to permit Count One to proceed against Laubmeier.

As stated above, a defamation count has three essential elements: a defamatory statement publicized to a third party with the appropriate level of fault. *Mangan*, 834 F. Supp. 2d at 204 (citing *Singer,* 379 N.J. Super. at 79,). The FAC adequately alleges that the statements about blood tests and improper breeding were untrue. Such statements would naturally tend to harm Carrabba's business and reputation in a general sense. Moreover, they were made to USRC, which had the power to inflict such harm directly. Thus, taking the allegations of the complaint as true for purposes of this motion, the statements are defamatory. Second, the FAC alleges that Laubmeier publicized the statements to a third party: the president of the USRC. Issues may arise as to whether there was some justification for doing so, or whether such reports enjoy some qualified privilege, but that is for another day. The last issue is whether Laubmeier made the statements with sufficient fault. "If the plaintiff is a private person, he or she need show only that the defendant was negligent." *Mangan v. Corporate Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 206 (D.N.J. 2011) (citing *McLaughlin v. Rosanio, Bailets & Talamo, Inc.,* 331 N.J. Super. 303, 314 (App. Div. 2000) and *Feggans v. Billington*, 291 N.J. Super. 382, 391 (App. Div. 1996) (requiring a showing that defendant negligently failed "to

ascertain the truth or falsity of the statement before communicating it")). The FAC alleges that Laubmeier made the statements with knowledge and reckless disregard of their falsity, a standard that exceeds mere negligence. The facts alleged in the complaint, moreover, are consistent with a culpable state of mind, as discussed above. Accordingly, the FAC states a claim for defamation against Laubmeier.

Laubmeier's motion to dismiss the complaint for failure to state a claim, pursuant to Rule 12(b)(6), is denied.

## CONCLUSION

For the reasons stated above, Morgart's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. Specifically, his motion to dismiss for lack of personal jurisdiction is denied, while his motion to dismiss for failure to state a claim is granted. As to James Laubmeier and Firehouse, the Motion to Dismiss on both 12(b)(2) and 12(b)(6) grounds is **DENIED**. As to Heather Laubmeier, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Her motion to dismiss for lack of personal jurisdiction is granted. Her motion in the alternative to dismiss for failure to state a claim is **DISMISSED AS MOOT** in light of this Court's lack of personal jurisdiction over her. An appropriate order follows.

KEVIN MCNULTY
United States District Judge

Dated: January 17, 2014